UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| JEFFERY K. BAKER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-152 |
| | ) | |
| OFFICER WES SNYDER, OFFICER ABE | ) | Chief Judge Collier |
| HAYES, OFFICER TIM WINDER, | ) | |
| OFFICER CHRIS JACQUES, OFFICER | ) | |
| DEWAYNE EVANYK, and OFFICER | ) | |
| MICHAEL HARRIS, | ) | |
| | ) | |
| *Defendants.* | | |

**M E M O R A N D U M**

Before the Court is Defendants Wes Snyder, Abe Hayes, Tim Winder, Chris Jacques,

Dewayne Evanyk, and Michael Harris's ("Defendants") Motion for Summary Judgment (Court File.

No. 29-1) in this action brought under 42 U.S.C. § 1983.  Defendants seek summary judgment on

all of Plaintiff Jeffrey K. Baker's ("Plaintiff") claims pursuant to Federal Rule of Civil Procedure

56.  For the following reasons, the Court will **DENY** Defendants' motion for summary judgment

as to Plaintiff's claims, both under 42 U.S.C. § 1983 and under Tennessee common law in their

individual capacities, for false arrest, false imprisonment, and malicious prosecution claims against

Defendant Jacques and Defendant Harris.

As to all other claims and all other defendants, the Court will **GRANT** the motion.

Specifically, the Court will **GRANT** Defendants' motion for summary judgment as to all other

claims against Defendant Jacques and Defendant Harris and will **DISMISS** these claims in

Plaintiff's complaint.  The Court will **GRANT** Defendants' motion for summary judgment as to all

claims against Defendant Snyder, Defendant Hayes, Defendant Winder and Defendant Evanyk and

will **DISMISS** these claims in Plaintiff's complaint.

## I.    STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary

judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.     **RELEVANT FACTS AND PROCEDURAL HISTORY**

This case is familiar to the Court since this is its second iteration. In *Baker v. Snyder*, No. 1:03-CV-89 (E.D. Tenn.), Plaintiff first filed this case with an almost identical complaint to the one in this action.[1] While the case was pending the defendants in the prior action filed a motion for summary judgment which the Court granted in part and denied in part. *Baker v. Snyder*, No. 1:03-CV-89, Court File No. 37 (E.D. Tenn. May 11, 2004). Shortly thereafter, the parties entered into a stipulation of dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(ii). *Id.*, Court File No. 51, (E.D. Tenn. May 25, 2004). This filing resulted in the case being closed with no final judgment being entered nor any decision on the merits. Subsequently, Plaintiff refiled the case and it was assigned the present case number.

The pertinent facts have not changed since the parties voluntarily dismissed the prior action. Therefore, the Court will start by adopting its recitation of facts from the Memorandum issued in conjunction with its Order granting in part and denying in part Defendants' Motion for Summary Judgment in *Baker v. Snyder*, No. 1:03-CV-89, Court File No. 37 at 3-6 (E.D. Tenn. May 11, 2004).

On March 20, 2005, Plaintiff filed the new complaint pursuant to 42 U.S.C. § 1983 and

---

[1]In fact, the only difference between the Plaintiff's previously filed and dismissed complaint and his current complaint is that in his previous complaint, Plaintiff (1) also named as a defendant the City of Cleveland; and (2) alleged the City of Cleveland had adopted abusive standards and practices, and had failed to train the individual defendants. (*cf. Baker v. Snyder*, No. 1:03-CV-89, Court File No. 1 at 3-6 (E.D. Tenn. May 25, 2004)). Further, in his current complaint, Plaintiff asserts his action is timely (Court File No. 1, ¶ 17).

asserted several state law causes of action, generally alleging Defendants "attacked, assaulted and seized" him "without proper authority and otherwise without a lawful process and in an unreasonable manner" in violation of his rights secured by the Fourth, Eighth, and Fourteenth Amendments and later conspired to swear out a false warrant for his arrest. (Compl., Court File No. 1-1, ¶¶ 1, 10, 16). Defendants then collectively filed the present Motion for Summary Judgment (Court File No. 29).

## III.    DISCUSSION

Plaintiff asserts several claims based on the incident which took place at his grandmother's home on March 22, 2002. Plaintiff claims (1) Defendants violated his Fourth Amendment rights by entering his grandmother's residence and seizing him without lawful authority (Court File No. 1, ¶¶ 10-11); (2) Defendants violated his Fourth and Eighth Amendment rights by subjecting him to excessive force transmitted through "a vicious animal" (*id.* at ¶¶ 9, 12); (3) Defendants' actions constituted the state law torts of assault and battery, malicious prosecution, false imprisonment, and false arrest (*id.* at ¶¶ 15, 16); and (4) Defendants, led by Defendant Harris, conspired to make "false and fraudulent allegations" in order to falsely and maliciously arrest, prosecute, and imprison him for the crime of assault (*id.* at ¶ 16).

Defendants move for summary judgment on all of Plaintiff's claims. Much of Defendants' argument mistakenly rests on the theory of *res judicata*[2] based on the Court's prior ruling on summary judgment in *Baker v. Snyder*, No. 1:03-CV-89 (E.D. Tenn. May 11, 2004). Defendants'

---

[2]The Court understands the terminology *res judicata* and collateral estoppel are disfavored in federal practice. The Court uses this terminology because the parties do and resolution of this case is not dependant upon the concept.

erroneously assume this case is a separate case from the earlier one.

The error of Defendants' assumption is demonstrated by an examination of the elements of *res judicata.* This defense bars future litigation based upon prior litigation only if each of the following elements is met:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

In this case, obviously none of the elements of *res judicata* is met. In the prior action, this Court did not issue a final decision on the merits insofar as it granted summary judgment. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). There has been no "subsequent action" between the parties, no "prior action," and no separate issues. Accordingly, *res judicata* offers no support for Defendants' position.

However, the principle underlying Defendants' motion is still present, i.e., the goal of finality in litigation. Rather than that goal being furthered by relying upon a prior final judgment it is furthered in this case by reliance upon an earlier decision in the same case. The legal theory that encompasses this goal is the doctrine of the law of the case. In some respects it bears some similarity to *res judicata.* The doctrine "is similar [to issue preclusion or collateral estoppel] in that it limits relitigation of an issue once it has been decided, but the law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages." *Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005). The law of the case doctrine "generally discourages courts from reconsidering

-5-

determinations that the court made in an earlier stage of the proceedings." *Id*. (citing *United States v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003)).

Although this action was assigned a new case number, it is not actually a new case. It is merely a continuation of the earlier filed case. There was never a final judgment on the merits in the earlier case. The Court's ruling on Defendants' motion for summary judgment prior to the joint dismissal of the case without prejudice was a prior determination and constitutes the law of the case. Therefore, any matter decided previously in the Memorandum issued in conjunction with its Order granting in part and denying in part Defendants' Motion for Summary Judgment in *Baker v. Snyder*, No. 1:03-CV-89, still stands. No party has asked the Court to reconsider that decision. The proper method for seeking a change in a prior order would by for a party to seek reconsideration, not simply refile claims rejected by the prior order. Since no motion for reconsideration has been filed the Court's prior order is binding in this litigation..

### A. Unlawful Search and Seizure

Plaintiff first argues Defendants were acting outside their jurisdiction or authority when they tried to apprehend him. In his current complaint, Plaintiff alleges Defendants "were outside their jurisdiction yet acting under color of law, and as officers and agents of the City of Cleveland, Tennessee, were acting without proper authority and otherwise without a lawful process and in an unreasonable manner" (Court File No. 1, ¶ 9). Specifically, Plaintiff challenges the constitutionality, under the Fourth Amendment, of the Defendants' execution of outstanding warrants for Plaintiff's arrest on March 22, 2002.

The parties have litigated, and the Court has decided, this issue on summary judgment in the prior action. *Baker*, No. 1:03-CV-89, Court File No. 37 at 7-9. The Court previously granted

summary judgment for Defendants on Plaintiff's Fourth Amendment search and seizure claim. *Id.* Since the Court's earlier ruling disposes of the claim, the Court need not reconsider the issue. Accordingly, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Amendment claims arising from the events of March 22, 2002.

### B. Excessive Force and State Law Assault and Battery

#### 1. Eighth Amendment Claims

Plaintiff alleges Defendants violated his Eighth Amendment rights. Plaintiff brought identical allegations against the same Defendants in the prior action, on which this Court granted summary judgment against Plaintiff. *Baker*, Case No. 1:03-CV-89, Court File No. 37 at 10. Plaintiff's Eighth Amendment claims are barred by the law of the case doctrine. Accordingly, the Court will **GRANT** Defendants' Motion for Summary Judgment as to the extent any of Plaintiff's claims rest on alleged violations of the Eighth Amendment.

#### 2. Fourth Amendment Claims

The Court granted Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Amendment excessive force claims against Defendant Hayes. *Baker*, Case No. 1:03-CV-89, Court File No. 37 at 10. Since Plaintiff's current claim is identical to his claim in the prior action, the Court's prior holding bars relitigation of the issue. Therefore, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Fourth Amendment excessive force claims against Defendant Hayes.

The Court, however, denied summary judgment as to the other individual Defendants in the prior action. *Baker*, Case No. 1:03-CV-89, Court File No. 37 at 16. As the Court explained in the prior action, Plaintiff's remaining excessive force claims arise from the use of the police dog,

"Officer" Ringo, and hinge on whether Defendants gave Plaintiff a reasonable warning before deploying the animal. *Id*. at 13. In the prior action, the Court determined a question of material fact existed as to whether Defendants gave Plaintiff a warning before deploying the animal, and, therefore, summary judgment was inappropriate. *Id.* at 13-16.

The Court has been presented with additional facts and based upon those facts the Court concludes there now remains no question of material fact as to whether Defendants gave Plaintiff warning before releasing Ringo. In support of their Motion for Summary Judgment, Defendants assert

> [Defendant] Harris approached the crawl space area, which had multiple doors coming out of it, and gave a loud verbal command for Baker to come out from where he was hiding, that he was with the police department, that [he] would be sending in the K-9 if Baker did not respond, and advised the Plaintiff that if he did not come out he would be bit.

(Defs.' Statement of Undisputed Facts in Supp. of Mot. for Summ. J., Court File No. 30, ¶ 58 (citing Harris Dep. 22:25-23:11)). Plaintiff responds by denying this allegation, but, in doing so, argues only Defendant Harris did not receive a response from Plaintiff (Pl.'s Statement of Undisputed Facts in Opp. of Mot. for Summ. J., Court File No. 36, ¶ 58 (citing Harris Dep. 23:15-16)). Plaintiff's minor objection to Paragraph 58 does not provide proof from which the Court can find the existence of a genuine issue of material fact. In this context, Defendants' actions are examined under an objectively reasonable standard, *Graham v. Connor*, 490 U.S. 386, 397 (1989), and whether Plaintiff actually heard Defendants' warnings is not relevant.

What is relevant to Plaintiff's excessive force claim is whether Defendants actually gave a warning. *Matthews v. Jones*, 35 F.3d 1046, 1051 (6th Cir.1994) (finding no excessive force as a matter of law where the record was clear the officer warned plaintiff before releasing the police dog

-8-

to apprehend him); *Robinette v. Barnes*, 854 F.2d 909, 911 (6th Cir. 1988) (holding officers' deployment of police dog objectively reasonable where undisputed testimony showed officers shouted three warnings before releasing dog); *see also Kuha v. City of Minnetonka*, 365 F.3d 590, 598-99 (8th Cir. 2003) (compiling cases in which courts held deploying a police dog after issuing warnings was objectively reasonable). Plaintiff has admitted Defendants gave warning before releasing Ringo. Even though Plaintiff marked ¶ 58 as "DISPUTED", Plaintiff did not dispute that a warning was given. Plaintiff marked as "UNDISPUTED" Defendants' factual assertion Defendant "Harris repeated this command [to come out from hiding or face the K-9 unit, referenced in ¶58] three times and received no reply or response from Baker to any of his commands" (Court File No. 36, ¶ 59). Additionally, Plaintiff marked as "UNDISPUTED" Defendants' factual assertion "After not receiving a response to his multiple commands for the Plaintiff to come out of the dark crawl space," Officer Harris released Ringo to locate Plaintiff (Court File No. 36, ¶ 60). Further, Plaintiff has admitted, once hidden in the crawl space, he could neither hear nor see any of Defendants' actions (*Id.* ¶ 55.).

As a result, Plaintiff fails to respond with any factual assertion to counter Defendants' consistent testimony they verbally warned Plaintiff before deploying Ringo. *Celotex*, 477 U.S. at 322. At most, Plaintiff merely alleges he could not hear Defendants' warnings, which is irrelevant under the applicable objectively reasonable standard. *Graham*, 490 U.S. at 397. Therefore, Defendants' Motion for Summary Judgment as to Plaintiff's Fourth Amendment excessive force claims will be **GRANTED**.

### 3.     State Law Assault and Battery

Defendants also move for summary judgment on Plaintiff's Tennessee common law assault

and battery claims. Under Tennessee common law, "an officer may only use the force reasonably necessary to accomplish [an] arrest, with due regard to other attendant circumstances, such as his own safety or that of others present." *City of Mason v. Banks*, 581 S.W.2d 621, 625 (Tenn. 1979). A police officer has a greater privilege to use force in executing a felony arrest warrant, as opposed to a misdemeanor arrest warrant. *Id.* Further, Tennessee courts apply federal case law on excessive force in similar contexts. *McCrary v. City of Memphis*, 2005 WL 452788, *6 (Tenn. Ct. App. Feb. 25, 2005) (applying an objectively reasonable standard to excessive force claims brought under state law and citing several United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") cases). Therefore, since Defendants were executing valid felony arrest warrants, and there exists no dispute of material fact that would render Defendants' use of Ringo objectively unreasonable, Defendants's Motion for Summary Judgment as to Plaintiff's state law assault and battery claims will be **GRANTED**.

### C.    Failure to Train

Plaintiff alleges a violation of his constitutional rights because "[t]he defendants [sic] failed to properly train the Defendants and their failure led to the injuries and damages sustained by the Plaintiff" (Court File 1-1, ¶ 14). Insofar as Plaintiff is attempting to resurrect his municipal liability or official capacity arguments, he merely restates a claim that was disposed of by summary judgment. *Baker*, No. 1:03-CV-89. The law of the case doctrine applies here. Accordingly, Defendants' Motion for Summary Judgment will be **GRANTED** as to these failure to train claims.

However, Plaintiff's complaint may also be read to allege Defendants are liable in their personal capacities for failure to train–better known as supervisor liability. *Lot v. Sexton*, 132 Fed.

-10-

Appx. 624, 628 (6th Cir. 2005). Since Defendants do not assert qualified immunity as to Plaintiff's individual capacity failure to train claims, they are deemed to have waived this defense for purposes of their Motion for Summary Judgment, and the Court will address only whether a constitutional violation giving rise to a § 1983 cause of action has occurred. *Brown v. Crowley*, 312 F.3d 782, 787-88 (6th Cir. 2002); *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir.1994) (explaining a waiver of an official-immunity defense "need not waive the defense for all purposes but would generally only waive the defense for the stage at which the defense should have been asserted").

The liability of supervisory personnel under § 1983 may not be based on respondeat superior, *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1987); it "must be based on more than the right to control employees." *Bellamy v. Bradley*, 729 F.2d 416, 422 (6th Cir.1984). In order to hold a supervisor liable under § 1983, "there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* Moreover, a claim of failure to supervise or properly train under § 1983 "cannot be based on simple negligence." *Id.* (citing *Hays v. Jefferson County*, 668 F.2d 869, 872 (6th Cir. 1982). Individual supervisory liability stemming from a failure to train requires no less than showing the supervisor was deliberately indifferent to the plaintiff's constitutionally secured rights. *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

The deliberate indifference standard "is a stringent standard of fault, requiring proof that a[n] actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). This usually requires showing a defendant was aware of prior unconstitutional acts by those in his charge and failed to take remedial measures. *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005).

Plaintiff alleges in his Complaint he "believes that the City of Cleveland had prior notice of the propensities of the dog" and "the officers said they could not call the dog off." (Court File No. 1, ¶ 13). However, in the face of Defendants' contrary factual assertions within their affidavits and statement of facts, these bare allegations are insufficient to present a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Plaintiff must come forward with some sort of proof or evidence. Plaintiff also submits a statement of one Vanness H. Bogardus III, who opines the lack of reprimand or disapproval of Defendant Harris's conduct amounts to a "policy or custom" (Decl. of Vanness H. Bogardus III, Court File No. 36, p. 16-17). Mr. Bogardus's statement is inadmissable as an ultimate legal conclusion, *see Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)("[a]lthough an expert's opinion may "embrace[ ] an ultimate issue to be decided by the trier of fact[,]"Fed.R.Evid. 704(a), the issue embraced must be a factual one), and is directed towards the City of Cleveland and not the individual Defendants. Furthermore, such a statement of legal conclusion is beyond the scope of Mr. Bogardus's expertise and knowledge. Moreover, even if admissible and accepted as true, Mr. Bogardus's observations are insufficient to demonstrate recurring but ignored constitutional deprivations, and do not rise to the level of deliberate indifference. *Walker*, 917 F.2d at 1456 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [actor], for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered."). Simply put, Plaintiff has not demonstrated– or even alleged– Defendants Captain Snyder or Lieutenants Hayes and Winder were aware of any ongoing constitutional deprivations, or even any situation that may have lead to such a deprivation. Therefore, in response to Defendants' Motion for Summary Judgment, Plaintiff fails

to show the supervisory Defendants were deliberately indifferent to Plaintiff's constitutional rights. Accordingly, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff's individual capacity supervisor liability claim.

### D.     False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiff next alleges, under both § 1983 and Tennessee common law, Defendants conspired[3] to perpetrate a false arrest, a false imprisonment, and a malicious prosecution against him. Plaintiff's claims stem from a June 2002 arrest warrant for assault on "Officer" Ringo sworn out by one of the Defendants ("the assault arrest warrant").  In the previous action, the Court denied summary judgment on these claims.

Defendants' motion for summary judgment argues only one defendant swore out the assault arrest warrant.  As a result, the other defendants are entitled to summary judgment.  While Plaintiff's complaint alleges Defendant Harris swore out the assault arrest warrant, Defendants' motion for summary judgment asserts Defendant Jacques swore out the assault arrest warrant.[4]  Plaintiff does not address this discrepancy either in his response to Defendants' motion for summary judgment or the attachments.  According to Defendant Harris's deposition testimony (attached to Defendants' motion for summary judgment), Plaintiff's counsel questioned Defendant Harris about the arrest

---

[3]The Court does not understand the complaint to allege a conspiracy.  For that reason the Court will not address whether such a cause of action, separate from the false arrest, false imprisonment, and malicious prosecution claims, exists under Tennessee law.

[4]To support the statement Defendant Jacques swore out the assault arrest warrant, Defendants' memorandum cites the "warrant attached as Exhibit I" (Court File No. 29 at 29). However, the Court notes the only charges on Exhibit I state "warrant x 20 Theft Aggravated Burglary" and assault charges are not mentioned.  There is no mention in Exhibit I of Plaintiff's alleged assault on Ringo.  Therefore, the Court cannot determine from Exhibit I who actually swore out the assault arrest warrant.

-13-

warrant:

> Q:    . . . You took out a warrant for Mr. Baker for an assault, did you not?
> A:    Yes, sir
> Q:    And that was dismissed, wasn't it?
> A:    Yes, sir.

(Court File No. 29, Attachment No. 18, page 24). Additionally, in the previous memorandum in support of Defendants' motion for summary judgment, Defendants stated Harris swore out an arrest warrant for assault, but this charge was later dismissed (*Baker*, No. 1:03-CV-89, Court File No. 37 at 6, *citing* Case No. 1:03-CV-89, Court File No. 31, pp. 9, 20). Therefore, the Court is unable to determine from the record whether Defendant Harris or Defendant Jacques swore out the arrest warrant. Neither Plaintiff nor Defendants argues the individual who swore out the assault arrest warrant was anyone other than Defendants Harris and Jacques. As such, the Court will **GRANT** Defendant Snyder, Defendant Hayes, Defendant Winder and Defendant Evanyk's motion for summary judgment on Plaintiff's federal and state false arrest, false imprisonment and malicious prosecution claims. The Court will now address the federal and state claims against Defendants Harris and Jacques.

### 1.    Federal Claims

Defendants seek summary judgment on Plaintiff's § 1983 derived claims of false arrest, false imprisonment, and malicious prosecution, arguing the Defendant swearing out the arrest warrant had probable cause to support his actions (Mem. in Supp. Defs.' Mot. for Summ. J., Court File No. 31, pp. 28-29). All of Plaintiff's claims include the common element of Defendants' acting without probable cause. *Gregory v. City of Louisville*, 444 F.3d 725, 748-49 (6th Cir. 2006) (remarking a cause of action for "malicious prosecution" under § 1983 is actually a Fourth Amendment claim to be free from pretrial detention without probable cause); *Spurlock v. Satterfield*, 167 F.3d 995, 1006

n.19 (6th Cir. 1999) (stating in § 1983 action, right to be free from arrest without probable cause "must be asserted according to the Fourth Amendment"); *Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir.1997) (finding the existence of probable cause for arrest forecloses false arrest claims). Thus, if the warrant was supported by probable cause, Defendants are entitled to summary judgment on Plaintiff's causes of action for false arrest, false imprisonment, and malicious prosecution.

Probable cause denotes "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillipo*, 443 U.S. 31, 37 (1979); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Whether probable cause exists is determined under a reasonableness standard based on all the facts and circumstances within the officer's knowledge at the time of the arrest or seizure. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003).

The warrant was based on the charge of assault. In Tennessee,

> A person commits assault who:
> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a). Notably, section 39-13-101 is drafted in terms of one person acting against "another." *Id.* "Another," in context, clearly means another person. Defendants argue law enforcement agencies throughout the country do not distinguish between their officers of the canine and human varieties. For example, "K-9 units that are killed in the line of duty routinely

-15-

receive post-humous [sic] honors befitting human officers" (Court File No. 31, p. 29). Therefore, Defendants conclude, "certainly it can be understood how a warrant for the arrest of [Plaintiff] would have been issued for striking a fellow officer, even if that officer was a K-9" (*Id.*).

Defendants fail, however, to apprise the Court of even one instance where a dog was held to be the victim of criminal assault in Tennessee. As much as police dogs may be treated like their human counterparts, they are not persons. The General Assembly classifies police dogs as property, not persons. *See* Tenn. Code. Ann. § 39-14-205 (listing the killing of a police dog as a property crime). Thus, in Tennessee, a person cannot commit criminal assault on a dog. Therefore, no reasonable or prudent officer could have concluded Plaintiff had committed criminal assault. *DeFillippo*, 443 U.S. at 37; *Crockett*, 316 F.3d at 580. As Defendants' probable cause argument fails, their Motion for Summary Judgment will be **DENIED** with respect to Plaintiff's § 1983 claims of false arrest, false imprisonment, and malicious prosecution.

### 2. State Claims

Defendants advance a stronger argument for summary judgment against Plaintiff's state law claims of false arrest, false imprisonment, and malicious prosecution. Defendants argue Plaintiff's claims are barred by several aspects of the Tennessee Governmental Tort Liability Act (TGTLA), Tenn. Code. Ann. §§ 29-20-101 to 408. First, Defendants argue Plaintiff's claims are barred by the generally non-extendable one-year statute of limitations within the TGTLA. Tenn. Code. Ann. § 29-20-305(b) ("The action must be commenced within twelve (12) months after the cause of action arises."); *Lynn v. City of Jackson*, 63 S.W.3d 332, 337 (Tenn. 2001) (holding Tennessee's general savings statutes do not apply to actions brought within the TGTLA). Plaintiff responds by asserting he brought his state law claims of false arrest, false imprisonment, and malicious prosecution against

Defendants in their individual capacities, and therefore, Tennessee's savings statute, Tenn. Code. Ann. § 28-1-105, applies to and makes timely Plaintiff's causes of action.[5]

Thus, the question before this court is whether Tennessee's general saving statute, Tenn. Code. Ann. § 28-1-105, applies to employees of governmental entities, as defined by the TGTLA, sued for false arrest, false imprisonment, and malicious prosecution in their individual capacities. The Tennessee Supreme Court has made clear savings statutes, including Tenn. Code. Ann. § 28-1-105, do not apply to claims brought under the TGTLA. *Lynn*, 63 S.W.3d at 337. Tennessee courts have not, however, explicitly decided whether individual capacity claims against employees of governmental entities fall under the TGTLA.

Because this argument raises an issue of state law not yet addressed by the Tennessee Supreme Court, this Court must independently "ascertain from all available data what the state law is and apply it." *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985). A brief overview of the nature of the TGTLA is helpful. The TGTLA serves to waive select portions of the absolute sovereign immunity enjoyed by governmental entities, Tenn. Code. Ann. § 29-20-201, and government employees sued in their official capacities, *Cox v. State*, 399 S.W.2d 776 (Tenn. 1965) (holding suits against state employees acting in their official capacities are deemed to be suits against the State itself). If the TGTLA does not remove sovereign immunity from a governmental entity, that entity's employees can be liable in their individual capacities. *Baines v. Wilson County*,

---

[5]Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution fall under the TGTLA to the extent they are against Defendants in their official capacities. *See Cox v. State*, 399 S.W.2d 776 (Tenn. 1965) (holding suits against state employees acting in their official capacities are deemed to be suits against the State itself). Plaintiff cannot avail himself of Tennessee's savings statute as to these claims, which are well beyond the applicable one-year statute of limitations set forth in Tenn. Code. Ann. § 29-20-305(b). *See Lynn v. City of Jackson*, 63 S.W.3d 332, 337 (Tenn. 2001).

86 S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002) (citing Tenn. Code. Ann. § 29-20-310). Conversely, if sovereign immunity for a governmental entity is removed, its employees are absolutely immune from suit in their individual capacities. Tenn. Code Ann. §§ 29-20-310(b); *Neely v. McDonald*, No. M2000-00099-COA-R3-CV, 2000 WL 1568387, *2 (Tenn. Ct. App. Oct. 20, 2000).

Notably, although this interplay between sections of the TGTLA does grant most government employees absolute individual capacity immunity in instances where a TGTLA claim lies against the governmental entity, *Neely*, 2000 WL 1568387 at *2, it appears not to alter the pre-TGTLA common law when individual capacity absolute immunity does not apply. When the TGTLA reserves immunity for governmental entities and employees in their official capacities, it allows plaintiffs to proceed against government employees in their individual capacities under Tennessee common law, unhindered by the TGTLA. *Baines*, 86 S.W.3d at 583 n.5 (remarking when, under § 29-20-310, the TGTLA does not prohibit suit against government employees in their official capacities, a plaintiff must still prove all elements of the tort he alleges). Where the TGTLA does not remove immunity for claims against governmental employees in their individual capacities, these claims are brought under Tennessee common law, and not the TGTLA. Therefore, the TGTLA-specific rule excluding the Tennessee savings statute, Tenn. Code. Ann. § 28-1-105, does not apply to these common law claims against government employees in their individual capacities.

In this case, the TGTLA does not remove governmental entity immunity from Plaintiff's state law claims stemming from the arrest warrant sworn out against him for assault. Tenn. Code. Ann. § 29-20-205(2) states

> [i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> . . .

> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights . . .

*Id.* Thus, Plaintiff's malicious prosecution and false arrest claims are explicitly excepted from the TGTLA's removal of immunity for governmental entities. *Id.* Plaintiff's claim for false imprisonment, which in this case, is synonymous with his false arrest claim is also excepted. *Barbee v. Wal-Mart Stores, Inc.*, 2004 WL 239763, at *5 (Tenn. Ct. App. Feb. 9, 2004) (citing *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990)). Therefore, the TGTLA does not bar Plaintiff's causes of action for false arrest, false imprisonment, and malicious prosecution against Defendants in their individual capacities. *See Baines*, 86 S.W.3d at 583 n.5 (citing Tenn. Code. Ann. § 29-20-310). Further, as explained above, these causes of action are under Tennessee common law, not the TGTLA. As a result, Tennessee's general savings statute, Tenn. Code. Ann. § 28-1-105, may apply.

Section 28-1-105(a) provides if a plaintiff brings an action within the time allotted in the pertinent statute of limitations, and subsequently voluntarily dismisses his suit, he may refile within one year of the date of dismissal, notwithstanding the original statute of limitations period. *Id.*; *Creed v. Valentine*, 967 S.W.2d 325, 326 (Tenn. Ct. App. 1997) (citing *Reed v. Cincinnati, N.O. & T.P. Railroad Co.*, 190 S.W. 458 (Tenn. 1916)). Plaintiff's complaint is based on events occurring no earlier than March 22, 2002 (Court File 1-1, p. 2). Plaintiff filed his original complaint on March 21, 2003, which was dismissed by stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(k)(ii) on May 25, 2004 (*Id.* at 5). Plaintiff filed his Complaint initiating the instant action on May 20, 2005. Thus, Plaintiff succeeded in filing his original action within the one-year personal injury statute of limitations, *see* Tenn. Code. Ann. § 28-3-104(a); Tenn. R. Civ. P. 6.01, and filing the

instant action within the one-year savings period. *See* Tenn. Code. Ann. § 28-1-105. Plaintiff's state law claims of false arrest and imprisonment and malicious prosecution are therefore timely, and Defendants' argument to the contrary fails.

Defendants next argue they are immune from Plaintiff's state law claims of false arrest, false imprisonment, and malicious prosecution under §§ 29-20-205(2) and 310(b) of the TGTLA. (Court File No. 31, p. 30.) As stated above, the TGTLA does not remove sovereign immunity for Plaintiff's state law claims of false arrest, false imprisonment, and malicious prosecution against Defendants in their official capacities. Therefore, the Court will **GRANT** Defendants' Motion for Summary Judgment as to these claims. However, also explained above, the TGTLA does not affect Plaintiff's state law claims against Defendants in their individual capacities. Thus, while Defendants enjoy absolute sovereign immunity from Plaintiff's official capacity state law claims, they are not afforded sovereign immunity from Plaintiff's individual capacity claims.

Finally, Defendants argue they are afforded good faith qualified immunity against Plaintiff's state law claims. Defendants base their argument on the assertion Plaintiff's "seizure was constitutional and held to be appropriate by [this Court] previously" (Court File No. 31, pp. 29-30). Defendants confuse the Court's prior opinion. In the prior action, the Court held Defendants' execution of outstanding arrest warrants against Plaintiff on March 22, 2002 was proper under Tennessee and federal law. But Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution stem from the later arrest warrant sworn against Plaintiff for assault on "Officer" Ringo. (*See* Court File No. 1-1, ¶ 16). The Court did not hold Defendants' actions regarding the assault warrant were proper. On the contrary, the Court held Defendants were not entitled to summary judgment as to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims. *Baker*,

-20-

No. 1:03-CV-89, Court File No. 37 at 19-23. Thus, the prior action does not support Defendants' argument for qualified immunity. Further, Defendants offer no other basis for their argument "the Defendants acted at all times reasonably and appropriately and are therefore entitled to qualified immunity . . . " (Court File No. 31, p. 30). Defendants' assertion is insufficient to warrant summary judgment. *Celotex*, 477 U.S. at 322. Therefore, for the purpose of Defendants' Motion for Summary Judgment, Plaintiff's state law individual capacity claims of false arrest, false imprisonment, and malicious prosecution are neither barred by the TGTLA's statute of limitations, nor precluded by sovereign or qualified immunity. Defendants' Motion for Summary Judgment as to these claims will be **DENIED**.


## IV.    CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment will be **DENIED** as to Plaintiff's federal and state law claims of false arrest, false imprisonment, and malicious prosecution claims under 42 U.S.C. § 1983 against Defendant Jacques and Defendant Harris  (Court File No. 29). The Court will **GRANT** Defendants' Motion for Summary Judgment in all other respects and will **DISMISS** all other claims in Plaintiff's complaint.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**